IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOHN NEW and ) | |
| BETH NEW, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 13-00675-CV-W-DGK |
| ) | |
| BORG-WARNER CORPORATION, et. al., ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING MOTION TO APPLY KANSAS LAW AND DISMISSING HENNESSY WITHOUT PREJUDICE

This case involves claims of asbestos exposure. Plaintiffs John and Beth New allege that John New ("Mr. New") contracted lung cancer after being exposed to asbestos while working at various businesses in Kansas and Missouri. Plaintiffs filed a lawsuit in Jackson County, Missouri, against the defendants that manufactured the offending products. Defendant Ford Motor Company removed the case to this Court.

Now before the Court are Defendant Hennessy Industries' ("Hennessy") motion to apply Kansas law and motion for summary judgment (Docs. 140, 142). Finding that Kansas possesses the most significant relationship to these parties and the causes of action, the Court GRANTS the motion (Doc. 140) to apply Kansas law. Since Plaintiffs have failed to satisfy the prima facie elements of the Kansas Silica and Asbestos Claims Act ("KSACA"), Hennessy's motion for summary judgment is GRANTED IN PART and the claims against it are DISMISSED WITHOUT PREJUDICE.

## Undisputed Material Facts[1]

Mr. New was born in Kansas City, Kansas, on April 2, 1947. He has since resided almost exclusively in various communities in Kansas. After graduating high school in 1966, he started working at Metcalf Auto in Overland Park, Kansas. Mr. New worked as a mechanic and ground brake shoes to fit automobiles. This task required Mr. New to use brake grinders and lathes manufactured by Ammco Tools, Incorporated ("Ammco"), Hennessy's predecessor-in-interest. This process released visible dust consisting of asbestos fibers that were in the brake shoes or on the brake drums. Mr. New stopped working at Metcalf Auto when he entered the Army in 1968.

After his stint in the Army, Mr. New began working at Harrelson Auto Parts in Gardner and Bonner Springs, Kansas. He worked for this employer from 1969 until 1971, and his tasks once again comprised grinding and lathing brakes with the Ammco products. He continued this practice when he worked at another Kansas-based automotive shop, Ken-Way Auto Parts, from 1971 until 1973.

In 1974, Mr. New started working at Dean Machinery Company ("Dean Machinery") in Kansas City, Missouri. Dean Machinery was an authorized dealer of Caterpillar heavy equipment, and Mr. New worked in various positions at its repair shop. From 1974 until 1994, Mr. New worked on, or in close proximity to, Caterpillar gaskets and other automotive parts that allegedly contained asbestos.

In 2011, Mr. New visited his primary care physician in Leawood, Kansas, for a routine physical examination. An X-ray revealed a mass on his right lung, and his physician referred him to a Kansas-based specialist who diagnosed Mr. New with lung cancer. He stopped working at Dean Machinery in January 2012.

---

[1] The Court excluded asserted facts that were immaterial to the resolution of the pending motion, asserted facts that were not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.

In March 2014, James Strauchen, M.D. ("Dr Stauchen"), a board-certified pathologist and professor at Mount Sinai School of Medicine in New York, New York, submitted an expert report. Dr. Strauchen's report concluded that Mr. New's exposure to asbestos was a substantial contributing cause of his lung cancer. Dr. Strauchen based his diagnosis upon the review of pathological slides of Mr. New's tissue samples. There is no evidence on who requested Dr. Strauchen's services or whether he had a doctor-patient relationship with Mr. New.

## Summary Judgment Standard

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has satisfied his or her initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must set forth specific facts showing there is a genuine issue for trial, *Anderson*, 477 U.S. at 248, but the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). But "[w]here the record taken as a whole could not lead a rational trier of fact to

3

find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 585 (2009)).

## Discussion

Hennessey's motions raise two related issues: (1) whether Kansas or Missouri law should apply to Plaintiffs' claims against Hennessy; and (2) whether Hennessy is entitled to summary judgment under Kansas law. The Court addresses each motion in turn.

### I. Kansas law applies because Kansas has the most significant relationship to the parties and causes of action.

The parties dispute which state's law should apply. Hennessy argues that Kansas law should apply because Kansas boasts the most significant relationship to the parties and the causes of action. Plaintiffs contend that Missouri law should govern.

Since the Court's jurisdiction is founded upon diversity of citizenship, it must apply the choice-of-law principles of the forum state, Missouri. *Eagle Tech. v. Expander Ams., Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015). Under Missouri choice-of-law principles, the Court must first determine whether there is a conflict between Missouri and Kansas liability law. *See Goede v. Aerojet Gen. Corp.*, 143 S.W.3d 14, 24 (Mo. Ct. App. 2004), *abrogated on other grounds by Sanders v. Ahmed*, 364 S.W.3d 195 (Mo. 2012).

There is. Under KSACA, to maintain a "civil action" for an asbestos-related cancer, the plaintiff must show that he received "a diagnosis by a competent medical authority that [his] asbestos-related cancer was proximately caused by asbestos exposure." Kan. Stat. Ann. § 60-4902(c)(3). An individual qualifies as a "competent medical authority" if, among other things, he "has or had a doctor-patient relationship with the exposed person, or in the case of a board-certified pathologist, has examined tissue samples or pathological slides of the exposed person at the request of the treating physician…." *Id.* § 60-4901(o)(2). The plaintiff must prove these

4

requirements by submitting a written report with supporting test results within sixty days of filing suit. *Id*. § 60-4903(a). If the plaintiff fails to make this showing, then the Court *must* dismiss the case without prejudice. *Id*. § 60-4903(c). Missouri, however, imposes no such requirement for maintaining asbestos-related civil actions. As discussed more thoroughly below, Plaintiffs have not presented any evidence showing that a "competent medical authority" rendered a "diagnosis" that Mr. New's lung cancer was proximately caused by asbestos exposure. This means that Plaintiffs' claims would fail under Kansas law but not under Missouri law. Accordingly, an outcome determinative conflict exists.[2]

When a conflict exists between multiple states' tort laws, the Missouri courts attempt to glean which state has the most significant relationship to the cause of action and the parties by applying § 145 and § 6 of the Restatement (Second) of Conflict of Laws. *See Am. Guarantee & Liab. Ins. Co. v. U.S. Fidelity & Guar. Co.*, 668 F.3d 991, 996-97 (8th Cir. 2012). Section 145 lists four contacts for the Court to consider, including: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2)(a)-(d) (1971). The Court must apply these contacts with an eye toward quality,

---

[2] In arguing over whether Dr. Strauchen meets the "competent medical authority" requirement, the parties *assume* this requirement is substantive, rather than procedural, law. The Court agrees with the parties' assumption. The statute defines "civil action" as "all suits or claims of a civil nature in *a state or federal court*." Kan. Stat. Ann. § 60-4901(n) (emphasis added). This indicates that the "competent medical authority" requirement—which must be met to maintain a "civil action"—is not merely procedural in nature, but rather, an integral component of substantive rights created by the statute. Numerous courts—including the Eighth Circuit—have treated similar state statutes as creating or relating to substantive state law rights. *See Keating v. Smith*, 492 F. App'x 707, 707 (8th Cir. 2012) (treating as substantive law the Missouri statutory requirement that a legally qualified health care provider must file an affidavit supporting the plaintiff's claims of negligence in order to file a medical malpractice claim in Missouri); *Mackovich v. United States*, 630 F.3d 1134, 1134 (8th Cir. 2011) (same); *see also Davis v. Ace Hardware Corp.*, No. 12-1185-SLR-CJB, 2014 WL 688132, at *8-15 (D. Del. Feb. 21, 2014) (holding that a plaintiff's failure to follow the medical authority requirements imposed by Florida's Asbestos and Silica Compensation Fairness Act—which is almost identical to the KSACA—required dismissal of the federal case because that statute's requirements were substantive, not procedural, in nature). The Court thus treats the "competent medical authority" element as substantive state law.

5

not simply quantity, because "[d]ifferent [contacts] may be entitled to more weight in regard to one issue than in regard to another." *Dillard v. Shaughnessy, Fickel & Scott Architects, Inc.*, 943 S.W.2d 711, 715 (Mo. Ct. App. 1997); *see id.* § 145(2) ("These contacts are to be evaluated according to their relative importance with respect to the particular issue."). In weighing these contacts, the Court must consider the § 6 factors:

> (a) The needs of the interstate and international systems,
> (b) The relevant policies of the forum,
> (c) The relevant policies of other interested states and the relative interest of those states in the determination of the particular issue,
> (d) The protection of justified expectations,
> (e) The basic policies underlying the particular field of law,
> (f) Certainty, predictability and uniformity of result, and
> (g) Ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

Citing to the various § 145 contacts and § 6 factors, Hennessy argues that Kansas clearly has the most significant relationship to the causes of action asserted against it. Plaintiffs never specifically refute Hennessy's arguments; rather, they focus upon the contacts that they and co-defendant *Caterpillar* have to Missouri. But the relationship among Caterpillar, Plaintiffs, and Missouri has no bearing on what law should apply to the claims against *Hennessy*, because under Missouri choice-of-law principles, a different state's laws could be applied to each defendant. *See Goede*, 143 S.W.3d at 24 (applying California liability law to one defendant in an asbestos exposure case and applying Wisconsin law to another defendant in the same case). Despite Plaintiffs' failure to separately analyze the contacts it has vis-à-vis Hennessy and Missouri, the Court addresses these contacts for the sake of completeness.

The Court first considers the place of injury. Hennessy argues that the place of Mr. New's cancer diagnosis—Kansas—is the place of injury. Some courts have held that the injury occurs where the diagnosis is made, not where the plaintiff is exposed to asbestos. *See, e.g.*,

6

*Bootenhoff v. Hormel Foods Corp.*, No. CIV-11-1368-D, 2014 WL 3744011, at *4 (W.D. Okla. July 30, 2014) (applying Oklahoma law and finding that the place of injury is where the cause of action accrues—i.e., where the plaintiff is diagnosed). But the Court need not parse the logic of this rule because the place of exposure and diagnosis are the same with respect to the claims asserted against Hennessy. It is undisputed that Mr. New's only contact with Hennessy's predecessor's products occurred in Kansas when he used them to grind asbestos-containing brakes. Mr. New also received his diagnosis in Kansas. Thus, the place of injury contact favors applying Kansas law.

The Court next turns to the place where the conduct causing the injury occurred. The parties provide little assistance in identifying the conduct's location. Although not alleged in the complaint, Plaintiffs' theory is that Ammco's products failed to contain a warning that their use on asbestos-containing brakes could lead to asbestos exposure. This suggests that the conduct arguably could have occurred where Ammco failed to place a warning label on its product or where Mr. New came in contact with the Ammco products. The record only shows that the latter occurred in Kanas; there is no evidence on where the former omission occurred. This contact appears to be inconclusive.

The third factor—the domicile or principal place of business of the parties—also slightly favors application of Kansas law. Hennessy is incorporated in Delaware and keeps its principal place of business in Tennessee. Plaintiffs currently reside in Kansas, and they resided there when Mr. New was allegedly exposed to asbestos while working with Ammco products. As indicated by the Supreme Court of Missouri in *Elmore v. Owens-Illinois, Incorporated*, this contact has limited relevance in asbestos exposure cases. 673 S.W.2d 434, 437 (Mo. 1984). But to the extent it deserves any weight, it favors applying Kansas law.

7

The fourth and final factor considers the focal point of the parties' relationship. This contact is of the "greatest relative importance" to the issue of liability in asbestos-exposure cases. *Elmore*, 673 S.W.2d at 437. In *Elmore*, the plaintiff was exposed to the defendant's asbestos-containing product through his employment relationship with various Missouri-based companies. *Id.* Applying this reasoning here, it is clear that the relationship between Hennessy and Plaintiffs was centered in Kansas. Mr. New only came in contact with Ammco's products through his employment with various Kansas-based automotive part and mechanic shops. This particularly weighty contact tips the scales heavily in favor of applying Kansas law.

The relevant § 6 factors also support application of Kansas law. First, the Court must consider the various policy factors. *See* Restatement (Second) of Conflict of Laws § 6 (b)-(c), (e) (1971). By enacting KSACA, the Kansas legislature intended to ensure that companies or employers that operated within Kansas's borders would not be forced to litigate putative asbestos cases without an initial showing that the claims have some medical and legal merit. The "competent medical authority" element effectuates this policy by requiring the plaintiff to receive an independent causal diagnosis, rather than one made by an expert witness. Thus, applying Kansas law and enforcing the "competent medical authority" requirement furthers the underlying policy because Plaintiffs are attempting to hold Hennessy—whose predecessor sent products into Kansas—liable without an independent medical source indicating that there is some merit to the claims. To the extent that Missouri's lack of legislation evinces a more plaintiff-friendly policy, it will not be thwarted because Missouri has no connection to the extraterritorial dispute between Hennessy and Plaintiffs. The policy principles of § 6 thus favor application of Kansas law to this Kansas-centric dispute. *See id.* Second, the Court has no concerns about applying the law of the neighboring state of Kansas, a familiar forum. *See id.* § 6

(g). Third, the Court has no concerns that applying Kansas law will cause any discord between Kansas and Missouri. *See id.* § 6 cmt. d.[3]

Since the § 145 contacts and the relevant § 6 factors favor application of Kansas law to Plaintiffs' claims against Hennessy, the motion to apply Kansas law is GRANTED.

**II. Plaintiffs' failure to comply with KSACA requires Hennessy's dismissal.**

Hennessy contends that it is entitled to summary judgment because Mr. New never received a diagnosis from a "competent medical authority." Plaintiffs counter that Dr. Strauchen qualifies as such, and thus, his opinion that Mr. New's exposure to asbestos was a substantial contributing cause of his lung cancer meets the prima facie elements under KSACA.

Hennessy has the better argument. For Dr. Strauchen to qualify as a "competent medical authority," he must at least possess a referral-based relationship with Mr. New's treating physician. *See* Kan. Stat. Ann. § 60-4901(o)(2). Plaintiffs have presented no evidence showing such a relationship, or any evidence that Dr. Strauchen had a doctor-patient relationship with Mr. New. Plaintiffs, however, suggest that other treating physicians rendered similar causal diagnoses, *see id.*, but they fail to cite any record evidence supporting this assertion. *See Anderson*, 477 U.S. at 248 (holding that nonmoving party must cite specific facts showing material issue for trial); *RSBI Aerospace, Inc.*, 49 F.3d at 402 (plaintiff cannot create sham facts to avoid summary judgment). Without evidence that a "competent medical authority" found that Mr. New's lung cancer was proximately caused by asbestos exposure, *id.* § 60-4902(c)(3), Plaintiffs have not met the prima facie elements for maintaining an asbestos-related civil action against Hennessy. *See id.* §§ 60-4902(c), 60-4903(a).

---

[3] The remaining factors not discussed in this paragraph are of lesser importance with respect to torts. *See* Restatement (Second) of Conflict of Laws § 145 cmt. b.

The only remaining issue is the proper remedy for Plaintiffs' failures. Although Hennessy moves for judgment as a matter of law, the statute upon which it relies unequivocally requires dismissal without prejudice upon a finding of failure to satisfy the prima facie elements. *Id.* § 60-4903(c) ("The court shall dismiss the plaintiff's claim without prejudice upon a finding of failure to make the prima facie showing required by K.S.A. 60-4902, and amendments thereto."). All claims against Hennessy are thus dismissed without prejudice. *Cf. Mackovich v. United States*, 630 F.3d 1134, 1134 (8th Cir. 2011) (affirming dismissal without prejudice of a plaintiff's medical malpractice claim for failure to file qualified medical authority affidavit).[4]

### III. Hennessy's remaining motions are denied as moot.

Caterpillar filed numerous motions to exclude testimony from Plaintiffs' experts (Docs. 148, 150). Hennessy later filed a motion to join those motions (Doc. 162) and numerous motions in limine (Docs. 214-242). Since Hennessy's dismissal moots these motions, they are DENIED.

### Conclusion

Since Kansas boasts the most significant relationship to Hennessy, Plaintiffs, and the causes of action, Hennessy's motion to apply Kansas law (Doc. 140) is GRANTED. Because Plaintiffs failed to satisfy the prima facie case elements of KSACA, all claims against Hennessy are DISMISSED WITHOUT PREJUDICE. Hennessy's motion for summary judgment (Doc. 142) is thus GRANTED IN PART and DENIED IN PART. Hennessy's remaining motions (Docs. 162, 214-242) are DENIED AS MOOT.

**IT IS SO ORDERED.**

Date: September 3, 2015  /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] Hennessy proffered alternative bases for summary judgment, but the mandatory dismissal requirement under KSACA obviates the need to reach those arguments.