IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOHN NEW and ) | |
| BETH NEW, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 13-00675-CV-W-DGK |
| ) | |
| BORG-WARNER CORPORATION, et. al., ) | |
| ) | |
| Defendants. ) | |

## ORDER DENYING CATERPILLAR'S MOTION TO STRIKE EXPERT TESTIMONY

This case involves claims of asbestos exposure. Plaintiffs John and Beth New allege that John New ("Mr. New") contracted lung cancer after being exposed to asbestos while working at various businesses in Kansas and Missouri. Plaintiffs filed a lawsuit in Jackson County, Missouri, against the defendants that manufactured the offending products. Defendant Ford Motor Company removed the case to this Court.

Now before the Court is Defendant Caterpillar Incorporated's ("Caterpillar") motion to strike expert testimony (Doc. 148). Caterpillar seeks to exclude the testimony of historians Gerald Markowitz, Ph.D. ("Dr. Markowitz") and David Rosner, Ph.D. ("Dr. Rosner"). Finding that Drs. Markowitz and Rosner meet the challenged requirements of Federal Rule of Evidence 702, the Court DENIES Caterpillar's motion.

**Background**

Mr. New worked at a heavy equipment repair shop from 1974 until 2012. From 1974 until 1994, Mr. New's duties consisted of replacing Caterpillar gaskets and brakes. The replacement process required him to scrape, buff, and/or grind the gaskets and brake materials which, Plaintiffs allege, released visible dust consisting of asbestos fibers contained in these

products.  Mr. New was diagnosed with lung cancer in 2011, and filed suit against Caterpillar and other defendants shortly thereafter.  Plaintiffs' complaint alleges strict products liability and negligence claims against Caterpillar for manufacturing asbestos-containing products and failing to warn about the dangers of asbestos.

Plaintiffs retained Drs. Markowitz and Rosner to assist in proving their claims.  Dr. Markowitz is the Distinguished Professor of History at the City University of New York, while Dr. Rosner is the Ronald H. Lauterstein Professor of Sociomedical Sciences and History at Columbia University.  Drs. Markowitz and Rosner have researched and authored numerous books, book chapters, and peer-reviewed articles on the prevalence of toxic substances in the workplace.  For instance, the two collaborated to write a book about silica in the workplace in the twentieth century, its relation to silicosis,[1] and the available knowledge about silica's dangerous propensities throughout this period.  In the process of writing this book, the two also gathered significant research on the historically available knowledge about asbestos, although they did not include it in their silica-focused book.

After reading their silica book, a law firm in another asbestos case asked them to write an expert report about the state of the art[2] of asbestos during the twentieth century.  They agreed to write the report only if their additional research supported their hypothesis: that there was readily available information about asbestos's dangerous propensities in the early to mid-twentieth century.  Their research confirmed this hypothesis.  The two then created a running bibliography, searched through various databases and libraries to accumulate thousands of articles, and culled

---

[1] Silicosis is, "[a] form of pneumoconiosis resulting from occupational exposure to and inhalation of silica dust over a period of years; characterized by a slowly progressive fibrosis of the lungs, which may result in impairment of lung function." *Silicosis*, PDR Medical Dictionary 1620 (26th ed. 1995).

[2] This term refers to, "[t]he level of pertinent scientific and technical knowledge existing at the time of a product's manufacture, and the best technology reasonably available at the time the product was sold." *State of the art*, Black's Law Dictionary 1631 (10th ed. 2014).

those articles down to approximately 500. They then assembled these articles into a 100-page, chronological report describing the available information about asbestos and its dangerous propensities. The thrust of their report is that from the early twentieth century through the early 1970s, there existed numerous medical journal articles, trade publications, and governmental reports linking the breathing of asbestos dust to adverse health conditions, including cancer.

Since writing this report, Drs. Markowitz and Rosner have testified in numerous asbestos exposure cases. A significant portion of their annual income consists of expert testimony fees from asbestos and other deadly toxin exposure cases.

## Standard

The party seeking admission of expert testimony has the burden of establishing admissibility by a preponderance of the evidence. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). To be admissible, expert testimony must be both relevant to a material issue and reliable. *Margolies v. McCleary*, Inc., 447 F.3d 1115, 1120 (8th Cir. 2006). Under Federal Rule of Evidence 702, if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, so long as (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Larabee v. MM&L Int'l Corp.*, 896 F.2d 1112, 1116 n.6 (8th Cir. 1990) (quotation omitted).

3
Case 4:13-cv-00675-DGK   Document 278   Filed 09/03/15   Page 3 of 9

**Analysis**

Caterpillar seeks to exclude the testimony of Drs. Markowitz and Rosner, arguing: (1) their testimony will not assist the jury in deciding any issue in this case; (2) they fail to qualify as "experts" under Rule 702; (3) their report was written solely for the purposes of litigation; (4) their report is unreliable because it has not been subjected to peer review; and (5) they will impermissibly testify about Caterpillar's state of mind, thereby deciding this jury issue. The Court addresses each argument in turn.

**I. Drs. Markowtiz's and Rosner's testimony will assist the jury in determining what was knowable about the dangers of asbestos during the relevant time period.**

Caterpillar contends that the testimony from Drs. Markowitz and Rosner will not assist the jury in understanding the evidence or a fact issue. The Court disagrees.

The testimony of these two professors could assist in illuminating an important issue in the case. Plaintiffs' negligent failure to warn claim squarely places at issue Caterpillar's knowledge about the hazards of asbestos. *See Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 107 (Mo. Ct. App. 2006) ("The defendant's standard of care, knowledge and fault are relevant consideration in a [negligent failure to warn] claim, but under strict tort liability, the defendant may be found liable without regard to his knowledge or conduct."). Drs. Markowitz's and Rosner's testimony will discuss what was *knowable* at the time that Caterpillar manufactured the allegedly offending products. This testimony will assist the jury in deciding whether Caterpillar is liable for negligence.

The substance of their testimony is also not something that the jury could simply glean from reviewing documents. Drs. Markowitz and Rosner used their expertise in researching to accumulate thousands of articles that span nearly one hundred years. They then synthesized articles into a coherent narrative on what was knowable about the hazards of asbestos at relevant

points in history. Simply put, their testimony involves more than the parroting of a few documents. The Court thus finds that their testimony will assist the jury.

**II. Drs. Markowitz and Rosner qualify as experts based upon their knowledge, experience, and education.**

Caterpillar next asserts that Drs. Markowitz and Rosner do not possess the requisite "knowledge, skill, experience, training, or education" to qualify as "experts." *See* Fed. R. Evid. 702. In particular, Caterpillar argues that Drs. Markowitz and Rosner would need to have medical degrees to be truly qualified to opine about the hazards of asbestos.

Caterpillar's arguments miss the mark. Drs. Markowitz and Rosner each hold a Ph.D. in history and they have extensively researched and written about the history of workplace toxins, including silica. While their prior research and scholarship has not significantly focused on asbestos, they need not demonstrate an asbestos-research specialty to qualify as experts. *Cf Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006) ("Most courts have held that a physician with general knowledge may testify regarding medical issues that a specialist might treat in a clinical setting."). Their significant education, training, and prior experience with similar topics sufficiently qualify them as experts.

And their lack of medical degrees does not undermine this expertise. Their proposed testimony does not delve into the minutiae of the medical evidence underlying the studies they synthesized, nor does it attempt to explain how asbestos causes cancer. Rather, they will testify about something peculiarly within their area of expertise: the historical availability of information about the health risks of a workplace toxin, asbestos. The Court thus finds that Drs. Markowitz and Rosner qualify as experts.

5

### III. Drs. Markowitz and Rosner's testimony is not excludable simply because their report was created in anticipation of litigation and in exchange for donations to their universities.

Caterpillar contends that Drs. Markowitz and Rosner solely prepared their expert report after being prompted by a law firm in another asbestos case. Drs. Markowitz's and Rosner's universities received substantial donations after they completed the report. According to Caterpillar, this financial and litigation-based motive taints their report, and thus, the Court should exclude their testimony on this basis.

This argument is unavailing. As an initial matter, Caterpillar misrepresents the exact circumstances surrounding the report's creation. Dr. Markowitz testified that they had previously researched the historical health risk information about asbestos when they wrote their book about silica. It was because of this book that the law firm even approached Drs. Markowitz and Rosner. When asked to write a similar research report on asbestos, Drs. Markowitz and Rosner stated that they would first have to systematically review the literature to determine the state of the art about asbestos. After doing so, they wrote the report. Thus, although they wrote the report in anticipation of past asbestos litigation, it stemmed from earlier, independent research on a similar industrial toxin, silica. *See Lauzon*, 270 F.3d at 692-93 (finding that expert testimony was not irreparably biased when it stemmed not only from past litigation but also independent testing).

To the extent Caterpillar has any concerns about the bias created by the donations for the report or the significant amount of annual income earned for their expert testimony, Caterpillar may explore those topics through cross-examination. *See Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 563 (8th Cir. 2014) ("As long as the expert's scientific testimony rests upon good grounds, based on what is known it should be tested by the adversary process with competing

6

expert testimony and cross-examination, rather than excluded by the court at the outset." (internal quotation marks omitted)). Thus, the Court will not exclude their testimony on these bases.

**IV. The lack of peer review of Drs. Markowitz's and Rosner's report does not render their testimony inadmissible.**

Caterpillar next seeks exclusion based upon the lack of peer review of Drs. Markowitz's and Rosner's report. It argues that this lack of scrutiny undermines the reliability of their research and report.

Among the many factors a court considers in performing its Rule 702 gatekeeping duty is whether the theory or technique used has been subjected to peer review or publication. *See Lauzon*, 270 F.3d at 686. The reasoning being, that scrutiny by peers may reveal flaws in the research or methodology. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993). Here, although the *report* was not subjected to peer review or publication, it appears that Drs. Markowitz and Rosner used sound research methods to reach their conclusions. As outlined in their deposition testimony, they used research databases to collect sources, kept a running bibliography of sources, and created a timeline to illustrate the number of sources available at different points in time. They then weeded out duplicative sources and wrote the report. As they testified to, their practices followed standard social science research methodologies.

Caterpillar's only critique of this methodology is that Drs. Markowitz and Rosner had the benefit of modern research technology to find the reports and articles, some of which Caterpillar argues were not readily available during the relevant time period. But this argument, at best, identifies a minor gap in their methodology that can be exposed through cross-examination. *See Miles v. Gen. Motors Corp.*, 262 F.3d 720, 724 (8th Cir. 2001) (holding that minor methodological deficiencies should be exposed during cross-examination, not excluded at the

outset); *see also Russell v. Whirlpool Corp.*, 702 F.3d 450, 458 (8th Cir. 2012) ("The Supreme Court has emphasized the usual tools to expose flaws in evidence remain available: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting *Daubert*, 509 U.S. at 596)); *cf. Robinson*, 447 F.3d at 1100 ("Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." (internal quotation marks omitted)).

Since Drs. Markowitz's and Rosner's testimony is founded upon a sound methodology, the Court finds that the lack of peer review of their report does not render their testimony inadmissible.

**V. Drs. Markowitz and Rosner will not testify about Caterpillar's state of mind.**

Caterpillar argues that Drs. Markowitz and Rosner will testify specifically about what Caterpillar knew at various points in time. According to Caterpillar, such direct testimony essentially removes this important issue from the jury's purview.

Caterpillar misconstrues these experts' testimony. Plaintiffs contend that Drs. Markowitz and Rosner will not testify to exactly what Caterpillar knew or should have known at the relevant times. On the contrary, they will testify to what was knowable at various points in history. While the jury may rely on this testimony to draw *inferences* about what Caterpillar knew or should have known, that does not transform Drs. Markowitz's and Rosner's testimony into direct evidence about Caterpillar's state of mind, a topic obviously beyond their personal knowledge or expertise. The Court thus finds that their testimony does not impermissibly invade the jury's province of making factual determinations. *See also Krik v. Crane Co.*, 71 F. Supp. 3d 784, 786-88 (N.D. Ill. 2014) (admitting state-of-the-art asbestos expert testimony where the expert did not

purport to testify about what the defendants' actually knew, but rather, what was knowable at given times in history).

## Conclusion

Since Drs. Markowitz and Rosner and their proposed testimony meet all the challenged requirements of Rule 702, Caterpillar's motion (Doc. 148) is DENIED.

**IT IS SO ORDERED.**

Date:  September 3, 2015                             /s/ Greg Kays
                                                                  GREG KAYS, CHIEF JUDGE
                                                                  UNITED STATES DISTRICT COURT